Dc5Whof1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4               v.                        94 CR 213 (RWS)

 5   STEVEN HOFFENBERG ,

 6
                      Defendant.
 7
     ------------------------------x
 8
                                          New York, N.Y.
 9                                         December 5, 2013
                                          2:05 p.m.
10

11   Before:

12                    HON. ROBERT W. SWEET,

13                                         District Judge

14
                          APPEARANCES
15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   RICHARD COOPER
          Assistant United States Attorney
18
     GARY H. BAISE
19        Attorney for Defendant

20

21

22

23

24

25
```

Dc5Whof1

1              (Case called)

2              THE COURT:  Please be seated.

3              MR. COOPER:  Good morning, your Honor.  Richard

4    Cooper, for the government.  With me at counsel table is U.S.

5    Probation Officer Michael Cox and supervising U.S. Probation

6    Officer Paul Wodeshick.

7              MR. BAISE:  Your Honor, Gary Baise, Olsson Frank,

8    Washington, D.C., for Mr. Steven Hoffenberg.  I'm accompanied

9    by Mr. Hoffenberg and counsel for Towers Investors and one of

10   the investors, Mr. Ed Kramer, from Mintz & Fraade.

11             THE COURT:  Let me just be sure that we're all on the

12   same page as to where we are and what's happening.  The

13   judgment in this case, and the sentence, was entered on March

14   7, 1997.  Mr. Hoffenberg was released from federal custody on

15   October 11, this year.  The probation officer sought to conduct

16   a home visit in connection with the supervised release, three

17   years' supervised release.  The terms and conditions with

18   respect to that supervised release were contained in the

19   judgment.  There were some difficulties, question of counsel,

20   the involvement of counsel, and whatever.

21             The probation officer informed me of that, sent me a

22   report, which was dated on the 15th of November, and, as a

23   result of that report, I asked that we all get together and

24   deal with these issues.

25             I think the problem that we face is the conditions are

Dc5Whof1

1    a matter of judgment, so to speak, and laid out in the

2    judgment.  There are some, I gather, from the materials I've

3    gotten from the defendant, that there may be some requests with

4    respect to certain matters relating to those conditions, and

5    the probation officer has also asked that there be some

6    additional conditions under the conditions of supervision.  So

7    that's where we are, I think.

8         Parenthetically, I've been familiar with this case

9    since 1994, and I recognize that its history has been extremely

10   difficult right from the get-go, and there's no sense

11   rehearsing any of the procedural problems, of which there were

12   many.  However, what I hope we can do is to work this out in a

13   fashion that will be clear and we won't have any difficulties.

14        Having said that, I think what I would suggest, unless

15   somebody's got a better way of going about this, is to find out

16   what the defense thinks, what modification in the standard

17   conditions of supervision the defense wants, see what the

18   government thinks about that, and then what the government

19   wants and see what the defense thinks about that.  That's the

20   way I would suggest we go forward, unless somebody has a

21   different idea.

22        MR. BAISE:  Your Honor, Gary Baise, for

23   Mr. Hoffenberg.

24        I was just presented, although Mr. Cooper advises me

25   he sent this document by e-mail yesterday to me, I was

Dc5Whof1

1    traveling yesterday and did not see it until just about ten

2    minutes ago, which is the document that was placed under seal,

3    and I guess I'm a little puzzled now, after reviewing this

4    document, as to why it was placed under seal and why the

5    defendant and his counsel are at a bit of disadvantage.

6            THE COURT:  What would you like to do as a result of

7    that?

8            MR. BAISE:  As a result of that, I would like to,

9    after consulting with my client here, have an opportunity to

10   review exactly what it is the government is seeking in terms of

11   the new conditions to the standard 13 conditions that your

12   Honor has imposed.

13           THE COURT:  I think we can find that out quite easily.

14   I guess the government can tell us.  In the report, the

15   requests which they gave me --

16           MR. BAISE:  Is there still something under seal, your

17   Honor?

18           THE COURT:  Who knows?  I don't know.

19           MR. BAISE:  Is this now out from under seal,

20   Mr. Cooper, since you e-mailed it to me?

21           THE COURT:  I haven't --

22           MR. BAISE:  Or Mr. Chan?  I'd asked both your deputy

23   and Mr. Cooper for a copy of this and they said at the time it

24   was under seal, but Mr. Cooper didn't have a copy of it.

25           THE COURT:  Let's back up a little bit.

Dc5Whof1

1          MR. BAISE:  Yes.

2          THE COURT:  Why was this sealed?

3          MR. COOPER:  Your Honor, it's my understanding that

4     when either violation reports or other reports related to

5     supervision are submitted to the Court by the probation office,

6     they are, as a matter of course, placed under seal until

7     judicial action is taken.

8          THE COURT:  As a result of the conference. yes.

9          The action I took, based on what -- it is,

10     parenthetically, to protect the defendant, that's the point the

11     whole thing.  But never mind.

12          MR. BAISE:  Okay.

13          THE COURT:  Never mind.  That's the explanation.

14          MR. BAISE:  In terms of protecting him, I clearly

15     would have waived, and I'm sure Mr. Hoffenberg would have

16     waived, because there's nothing in here that's embarrassing to

17     him, at least that I have read to date.

18          THE COURT:  "For these reasons stated above, we're

19     also requesting the Court modify the conditions of supervision

20     to include both the financial disclosure special condition and

21     a search special condition.  We're also requesting the Court to

22     enter order a mental health assessment and evaluation to

23     determine the defendant's current mental state."  Okay?

24          MR. BAISE:  And Mr. Hoffenberg would waive that.  The

25     only thing I would say, Mr. Cooper and I have not talked about

Dc5Whof1

1    this, but it seemed to me any of these suggested additions, I

2    don't know if they're restrictions, go that far just yet, as

3    your Honor knows, have to be put in such a way as there's a

4    reasonably direct relationship between what they're asking for

5    and the crime that he was convicted of, and it would seem to me

6    what we were going to talk about today were some of these

7    restrictions, and I haven't had a chance to fully read it.

8            THE COURT:  What do you want to do about that?  Do you

9    want to put this over until tomorrow?  Do you want to put it

10   over until two?  What do you want to do about it?

11           MR. BAISE:  I think putting it over until 2:00 will be

12   an excellent idea, your Honor.

13           THE COURT:  Done.

14           MR. BAISE:  Done.

15           (Luncheon recess)

16

17

18

19

20

21

22

23

24

25

Dc5Whof1

<pre>
  1                        AFTERNOON SESSION

  2                            2:00 p.m.

  3              THE COURT:  I hope you all had a pleasant luncheon.

  4         What would the defense like to accomplish this

  5    afternoon?

  6              MR. BAISE:  Three items, your Honor.

  7              First, your Honor, I have had an opportunity to read

  8    what was purportedly the sealed document, and I have some

  9    comments on it.

 10              Secondly, there are some travel restriction issues

 11    that I would like to talk about, and, thirdly, talk about some

 12    mechanics as it relates to the restitution issue and the

 13    individual or individuals Mr. Hoffenberg can discuss.

 14              THE COURT:  Okay.

 15              MR. BAISE:  And a fourth point; that is, with regard

 16    to procedure and this Court's schedule, depending on

 17    Mr. Cooper's schedule, of course, I would like to respond to

 18    this sealed document formally rather than just off-the-cuff

 19    comments, since this is a status hearing today, not a

 20    full-blown hearing.

 21              THE COURT:  We'll wait and see how this all

 22    materializes as to that.

 23              MR. BAISE:  Sure.

 24              THE COURT:  Yes, I think you're correct.  The

 25    probation officer did not ask for a hearing on what might have
</pre>

Dc5Whof1

1    been charges but were not set down as charges.  We're at a

2    preliminary stage, I agree.  Okay.  Tell me what you would like

3    to tell me.

4              MR. BAISE:  What I'd like to address initially is the

5    visitation issue because I think, in part, I generated this

6    issue in my conversations with Mr. Cox.

7              In the sealed document -- is the document now

8    unsealed?

9              THE COURT:  I don't care.

10             MR. BAISE:  You don't care?

11             THE COURT:  You don't care.  You've got it.

12             What's the government's view?

13             MR. COOPER:  I don't know whether it's sealed or not,

14   but everybody, I think, has the document.

15             THE COURT:  Everybody that needs it has got it.

16             MR. BAISE:  I now have it, so as long as it's public,

17   that's fine.

18             THE COURT:  Sure.

19             MR. BAISE:  That document includes a letter written by

20   one of my associates, after I had left to go overseas, and I'd

21   like to make two points clear with regard to that letter.  One,

22   I am not saying Mr. Hoffenberg has any right to counsel at

23   these visits.  I understand what the law says and what the

24   Second Circuit has ruled.  So he does not have a right to

25   counsel at these visits.  This says we're demanding a right to

Dc5Whof1

 1    counsel.  I'm not.

 2                THE COURT:  I understand.

 3                MR. BAISE:  Okay.

 4                THE COURT:  That's helpful.

 5                MR. BAISE:  That takes care of that issue and takes it

 6    off the table.

 7                THE COURT:  Yes.

 8                MR. BAISE:  There's a subsidiary issue.  I had said to

 9    Mr. Cox that I would like to have a person there when the

10    supervised release officers came by to see him mainly to

11    protect Mr. Hoffenberg from himself, from saying something that

12    he probably shouldn't say.  But there's nothing in these

13    supervised release 13 provisions that you set forth that said

14    he could not have someone there.  So my first request, and I

15    can put this in a memorandum to you or we can do an order to

16    show cause as to why they believe no one should be there.

17                Now, the argument Mr. Cox and Mr. Wodeshick and

18    counsel make, it is for the safety of the officers that there

19    not be someone there.  That strikes me as counterintuitive,

20    your Honor.  The whole reason we have videotaping in police

21    cars is to protect the officers.  Only in the letter did my

22    colleague suggest maybe we would consider videotaping just to

23    protect both parties.  So that is an issue I'd like to bring

24    before the Court today.  May he have a person, next-door

25    neighbor, and it does appear from what these papers say, to me,

Dc5Whof1

1    they want to come at any hour of the day or night.  Well, most

2    of the cases deal with sex offenders, people using computers

3    for computer crimes, be able to drop in on the defendant.  It

4    strikes me Mr. Hoffenberg was convicted of securities fraud.  I

5    don't understand why you'd have to just be able to drop in any

6    time.

7            I'm not asking you to make a decision on that today.

8    We will address that in formal papers, if that is acceptable to

9    you.  But it just struck me as a bit odd for the government to

10   say they don't want anyone there for their own safety.  Here's

11   a fellow 69 years of age.  I don't think that he constitutes

12   much of a physical entity of safety to a fellow like

13   Mr. Wodeshick or Mr. Cox because he realizes what you'd have

14   the power to do; I'm sure you'd do something untoward as to

15   that.  So that issue I wanted to address.

16           Secondly, travel.

17           THE COURT:  I'm sorry?

18           MR. BAISE:  Secondly, travel.

19           THE COURT:  Oh, yes.

20           MR. BAISE:  The travel restriction.

21           The way this is written and it's just the common term

22   and just a form, I am told that he can't -- well, actually, the

23   document says you can't travel outside the judicial district.

24   As we have reported to the Court, he has a wife that is in very

25   serious condition with regard to cancer down in Philadelphia.

Dc5Whof1

He has been told, I'm told, verbally that he can go.  He would

like to have that in writing.  So I'd like to have today a

change on the travel restriction, and that would include, I'm

told, he could even go over to --

        Where is it, Ed?  Queens?

        MR. KRAMER:  That would be Queens, Brooklyn, Staten

Island, Fort Lee, New Jersey, anywhere very close.

        THE COURT:  Let's be specific about it.

        MR. BAISE:  Yes.

        THE COURT:  I understand Philadelphia.  Are there

other places?  I don't think you have this problem in

Washington, but, you see, we do.  We have this across-the-river

problem, so if there's some reason to go to a particular place

in the Eastern District, fine, I'm pleased to hear it.  But

just to open it up to another judicial district, let's be

precise.

        MR. BAISE:  Precisely would be Philadelphia any time

he wants to go to Philadelphia.

        THE COURT:  We'll have to work that out, but probably.

        MR. BAISE:  On something like that, would you prefer

that I propose to Mr. Cooper a written amendment to the travel

item?

        THE COURT:  I think we can work these things out.

        MR. BAISE:  Okay.

        THE COURT:  What we can't work out, then we'll have to

1    struggle with.  But let me just suggest, I make no secret of

2    it, I have great respect for our probation officers and the

3    work they do.  Mr. Hoffenberg may not believe it, but they're

4    trying to help, and that is their purpose.  They also want to

5    be sure that all the conditions are fulfilled, and so on.  I

6    think as a general rule, it's very useful if you can work with

7    the probation officer and work out these things consensually,

8    if that can be done.  If it can't be done, of course, I'm here.

9              MR. BAISE:  And I would agree with your Honor.

10             THE COURT:  Okay.

11             MR. BAISE:  In fact, I was pretty surprised.  I had to

12   go to Rome and I thought Mr. Cox and I agreed that we were

13   going to attempt to do exactly what your Honor outlined.

14             THE COURT:  Maybe we can work it all out.

15             MR. BAISE:  Okay.

16             THE COURT:  What else?

17             MR. BAISE:  We can work out --

18             THE COURT:  Do you want to take a moment and tell me

19   where?  I won't say why would anybody want to go to Staten

20   Island, that would be inappropriate.  But where do you want to

21   go?

22             MR. BAISE:  There was one other item that I mentioned

23   in my letter, that he wanted to travel to China.

24             THE COURT:  That's a horse of a different color.

25             MR. BAISE:  A horse of a different color, I

Dc5Whof1

1    understand.  But I would raise that when you say be specific.

2    I have been specific.

3            THE COURT:  Philadelphia, I understand.  The other

4    places in New York, do you want to tell me what that's all

5    about?

6            MR. BAISE:  I do not think we're prepared to provide

7    all of the areas.  Just limiting to this district, I thought,

8    was, and he thought --

9            THE COURT:  China, I understand.  Anything else?

10           MR. BAISE:  Yes.  For example, and this is just a

11   practical problem, your Honor, he feels he cannot go out to JFK

12   to pick up his daughter, something silly like that.  So it's

13   household type issues that he has brought up to me.  I remember

14   the airport issue, but it's common sense, I guess, exemptions,

15   if you will, from just the judicial district.

16           THE COURT:  Okay.  Anything else?

17           MR. BAISE:  Yes.  Let's talk about the restitution

18   issue.

19           It has been represented to me by Mr. Hoffenberg that

20   he feels, in his discussions with Mr. Wodeshick and Mr. Cox, he

21   is unable to talk to any victims.  That's No. 1.

22           No. 2, Mr. Kramer is here representing victims.

23           No. 3, it seems given his requirement for restitution,

24   $475 million, that he needs to have considerable latitude in

25   obtaining restitution for those individuals.  Part of that

Dc5Whof1

```
 1   involves a personality I'm sure your Honor is familiar with,
 2   Mr. Jeffrey Epstein.
 3            THE COURT:  I'm not.
 4            MR. BAISE:  You're not?
 5            THE COURT:  That's because -- you're a young fellow --
 6   I'm old and I'm not hip.
 7            MR. BAISE:  Well, I'm not hip either.  In fact, I was
 8   just talking to Mr. Hoffenberg last night.  He couldn't believe
 9   I'm 72, so I may look young, I guess I do.  But I'm not far
10   behind you.
11            THE COURT:  I think it's your necktie.
12            MR. BAISE:  It's got a little white on it.
13            Anyway, what we would like today to have from your
14   Honor is a direction on the record that he can deal with the
15   appropriate individuals with regard to obtaining the
16   restitution of this 475 million of which Mr. Epstein, I'm told,
17   and Mr. Kramer may want to address this in more specifics, but
18   Mr. Epstein is a critical player here.  So, yes, I would like a
19   direction from his Honor that we can deal with Mr. Epstein.  I
20   make the representation that he feels that he can't deal with
21   him, we obviously have not put anybody on the witness stand to
22   see what Mr. Hoffenberg believes is correct with Mr. Wodeshick
23   or Mr. Cox, but certainly I would like to have that direction
24   from the Court today.
25            THE COURT:  Anything else?
```

Dc5Whof1

1          MR. BAISE:  With regard to coming into the house at

2    any hour.

3          THE COURT:  Yes.

4          MR. BAISE:  I had mentioned that.

5          THE COURT:  You did.  And you mentioned that you'd

6    like to have somebody there.

7          MR. BAISE:  That's part of it.  That's half of the

8    argument.  And as your Honor knows better than I, coming in at

9    any time and certainly when you have, as I said, a sex offender

10   or computer crime guy, absolutely, but it would seem to me, and

11   I've requested this in my letter to his Honor, or Mr. Chan,

12   that during normal working hours could we just have sort of

13   that limitation on it, not just any time, any hour?  He is

14   trying to get back into normal life, and, again, the whole

15   purpose of the Sentencing Reform Act of '94, I guess it was, is

16   to see how we can rehabilitate and get these folks back into

17   the community, at the same time protecting the interests of the

18   community.  So it seems to me that a limitation, reasonable

19   one, make it from six to six, but just sort of reasonable

20   business hours, and again, they don't have to notify him, that

21   that is clear.  But, yes, I guess I would like, not guess, I

22   would like to have that as a direction from your Honor today.

23         Finally, between Mr. Cooper and me, I would like X

24   number of days, not many, a week or eight or nine days, because

25   we obviously know we're getting into the holiday period, to

Dc5Whof1

1    have at least a written response to all that is asserted in

2    this paper, because while we don't think he's any threat to

3    society, secondly, we do not believe these travel restrictions

4    should be quite as stringent as they are, as we've talked

5    about, and this idea, your Honor, of bringing up some of these

6    items in the document, which I'll address if you permit me to

7    file a response here, going back and dredging up incidents that

8    occurred when this gentleman was 22 years old strikes me as a

9    bit over the top.  The theft issue of the diamond ring when he

10   was a youngster, causing problems in the prison system tells me

11   that that was about ten years ago, these are not reasonable

12   grounds for seeking some of the restrictions Mr. Cox and

13   Mr. Wodeshick are seeking here.

14          We're trying to, at the end of the day, at the end of

15   the day, obtain, through him and his resources, 475 million for

16   the victims, and I think anything, in fact, there is a comment,

17   I think at the bottom of page five, top of page six, that

18   suggests to me that the U.S. Department of Justice's victim

19   witness coordinator, communication information regarding the

20   offender's status, says that, relative to the repayment of

21   restitution should only be conducted through their office.

22   That seems to me and seems to Mr. Hoffenberg to be a quite

23   limiting factor in terms of restitution, and maybe there's case

24   law for that, but there is certainly nothing in the 13

25   requirements that you signed off on, and he agreed to, that

Dc5Whof1

1    would seem to suggest that he run everything through the office

2    on what he's attempting to do.

3            At the end of the day, it seems to me that the

4    public's interest is best served here by him obtaining the

5    money through the sources he thinks still owe him funds, and

6    that's why I bring up this Mr. Epstein's name in seeking your

7    permission today for him to be able to have contact with

8    Mr. Epstein.  As we know and what got him into difficulty was

9    his expertise in collection work, but that was a securities

10   violation.  There is no problem with his actual collection

11   work.  It was the securities side that brought him into

12   disrepute and caused him to be punished to the extent he has

13   been punished.

14           So, Mr. Epstein, travel, and some reasonableness with

15   regard to coming to his place, could there be someone there.

16   Sometimes if they come unannounced he probably wouldn't be able

17   to have someone there.  But again, I feel, as I started this

18   argument out here, this conversation with you, I may have

19   started this in my conversation with Mr. Cox in suggesting I'd

20   like to have someone present when Mr. Wodeshick and Mr. Cox are

21   there, and they've taken that as a threat, I don't know why,

22   because a second person there helps ensure their safety as far

23   as I'm concerned.

24           THE COURT:  That's it?

25           MR. BAISE:  Mr. Kramer, do you have anything that you

Dc5Whof1

1     would like to say with regard to the victims?

2               THE COURT:  No, no, no.

3               MR. BAISE:  You don't want to hear from him?

4               THE COURT:  Thanks.  I'm delighted to have you, sir, a

5     great pleasure, but you're not a party to this proceeding.

6               MR. BAISE:  But this is just a status conference.  We

7     understand that.  And fourthly, may we set some date by which

8     we'll respond.

9               THE COURT:  We'll see.  We'll see.

10              MR. BAISE:  Again, on a quick turnaround.

11              THE COURT:  Just a second.

12              MR. BAISE:  You bet.

13              THE COURT:  Anything else?

14              MR. BAISE:  I think that's all I ought to comment on

15    today, to the extent we're at a status conference.

16              THE COURT:  Appreciate it.

17              What's the government's reaction to this?

18              MR. COOPER:  Your Honor, the government will take each

19    of those points in turn.

20              THE COURT:  Yes.

21              MR. COOPER:  First, with respect to the request that

22    somebody be present during home visits, and Officer Cox, I'm

23    sure, has a view on this and can speak to it as well, the

24    government believes that that is impractical in the context of

25    the goals of supervised release where the ability not to have

Dc5Whof1

1    advance notification of the time of a visit is very important

2    to the officers, the ability to have direct contact and

3    flexible contact with the releasee, to see what's going on in

4    the releasee's life, whether they remain a danger to the

5    community, whether there are other conditions that are required

6    and, frankly, how to respond to requests like the ones that

7    defense counsel's making now, for all those reasons, it's very

8    important for a probation officer to have direct, unmitigated

9    contact with a releasee.

10           One comment with respect to the safety issue, it's my

11   understanding that the primary reason to have that direct

12   contact is not for safety reasons, although I would note in the

13   defendant's Bureau of Prisons file, there is a write-up with

14   respect to an assault that occurred on corrections staff.  So

15   there are potential safety concerns, but really our core

16   position on that is that it's just inconsistent with the

17   purposes and with the methods of supervision.

18           On travel, your Honor, the defendant was given oral

19   permission to travel to Pennsylvania, and I believe we would be

20   fine with advance notification and approval of the probation

21   department with that type of travel.

22           With respect to other locations, as your Honor already

23   said, it's a fact-specific issue that the defendant can

24   certainly raise with the probation officer, to the extent

25   there's any disagreement, that could be elevated to the Court,

Dc5Whof1

1    but I don't know that we need a direction now with respect to

2    other locations.

3           On restitution, the probation office has asked the

4    Court to direct the defendant not to have any contact with the

5    victims, and the government believes that that is appropriate

6    under the circumstances.  As your Honor, I'm sure, is much more

7    familiar with the facts of this case than I am, this was a half

8    billion dollar Ponzi scheme, thousands upon thousands of

9    victims, and it's unclear why contact with those victims would

10   further the gathering of restitution over and above merely

11   re-victimizing those same victims in the process.  Without a

12   particular showing of why the defendant would need to have

13   contact with those victims and what could be done to mitigate

14   the risks, we oppose that request.

15          With respect to the specific requests for this

16   Mr. Epstein, it's unclear why the defendant needs that contact

17   or who this Mr. Epstein is, but I presume that that also can be

18   worked out between the probation office and the defendant, and

19   to the extent that it can't be worked out, it can be brought

20   before your Honor.

21          On the repayment of restitution, it's my understanding

22   that restitution payments are made through the clerk of the

23   court here and not through the U.S. Attorney's office or the

24   probation officer.

25          THE COURT:  Yes.  By the way, I take it it's not

Dc5Whof1

1    necessary for us to worry about this today, but what's your

2    understanding of the normal procedure, or if you want to check

3    on it -- I have never, oddly enough, gotten into a problem

4    about restitution because, I guess, it happens relatively

5    rarely.  But what's your understanding?  Let's assume that

6    Mr. Hoffenberg can accomplish this and finds $100 million

7    wherever he finds it and wants to provide that in restitution.

8    What is your view?

9              MR. COOPER:  I believe, and I can confirm this for

10   your Honor, the process would be for the defendant to write a

11   check essentially or make payment to the clerk of the court

12   here and then the clerk of court, once the money goes above a

13   certain threshold, distributes that to the victims.

14             THE COURT:  Thank you.

15             MR. COOPER:  Last, on time limitations --

16             THE COURT:  I'm sorry?

17             MR. COOPER:  On the defense's request that your Honor

18   impose limitations on the times and days that the officer can

19   conduct home visits.

20             THE COURT:  Oh, yes.  Working hours.

21             MR. COOPER:  Exactly.  A few points on that.  That,

22   too, is inconsistent with the need to be flexible and to visit

23   the defendant at times when he's home, when there might be

24   things that the probation officer needs to observe in the home.

25   It's inconsistent with the flexibility that the probation

Dc5Whof1

1     office requires.  To restrict it to working hours in a

2     situation where the defendant is intending to go back to work

3     would also seem to be unreasonable, given that those would be

4     the hours that he would be out of the house, so home visits

5     would place an undue burden on the probation office because the

6     defendant just wouldn't be home.

7              I believe I've addressed all the defense's issues.  As

8     your Honor is aware, there are other additional conditions that

9     the probation office had wanted to add.  I can address those

10    separately, if your Honor would like.

11             THE COURT:  Tell the defense what you want.

12             MR. COOPER:  As laid out in the probation office's

13    request for conference, a financial disclosure special

14    condition, a search special condition.

15             THE COURT:  When you say financial disclosure, what

16    practically does that mean?

17             MR. COOPER:  One moment, please, your Honor.

18             Your Honor, it's my understanding, based on the

19    officer, that the probation office provides the defendant with

20    certain forms to complete about assets, things like that.

21             THE COURT:  There are, I take it, like every good

22    government agency, standard forms.

23             MR. COOPER:  I believe there are standard forms.

24             THE COURT:  And that's what you're talking about?

25             MR. COOPER:  To be supported by underlying documents,

Dc5Whof1

1   like bank statements and otherwise.

2              THE COURT:  That's one.

3              MR. COOPER:  No. 2 is a search special condition with

4   respect to the search of the premises.

5              THE COURT:  What's that?

6              MR. COOPER:  It's the ability for the probation office

7   to go into the premises at a reasonable time and at a

8   reasonable hour to ensure that there is no illegal conduct, no

9   contraband, no issues.

10             THE COURT:  Okay.

11             MR. COOPER:  There's no contact with victims.  We've

12  already addressed that.

13             THE COURT:  Yes.

14             MR. COOPER:  A request that the Court direct the

15  defendant not to seek employment at his previous company,

16  Towers.  It's our understanding, based on what the defendant

17  has told the probation office, that the defendant intends to

18  resume a position at Towers, and we believe that poses a risk

19  to the community.

20             THE COURT:  Anything else?

21             MR. COOPER:  The probation office has requested that

22  the defendant be directed to do community service of a hundred

23  hours or more.

24             THE COURT:  Okay.

25             MR. COOPER:  Mental health assessment.

Dc5Whof1

1           THE COURT:  Okay.

2           MR. COOPER:  And, lastly, that the Court direct the

3    defendant, or presumably his agents, not to videotape or record

4    probation home visits.

5           THE COURT:  Right.

6           MR. COOPER:  That's all.  Unless your Honor has any

7    questions, that's all we have.

8           THE COURT:  No.  That's fine.

9           MR. COOPER:  Thank you.

10          THE COURT:  Does the defense want to be heard any

11   further on those matters or any of the others?

12          MR. BAISE:  Yes, your Honor.  With regard to what

13   counsel referred to as an assault, the rest of the story, as

14   they would say, the assault was on Mr. Hoffenberg.  It was 14

15   years ago.  I don't think he is much of a threat in terms of

16   safety to these officers, and to use that as your pretext

17   strikes me as a tad weak.

18          No. 2, with regard to the travel to Philadelphia,

19   Mr. Hoffenberg asked for written authority, in part, because I

20   ask him to always get things in writing, the authority

21   allegedly for that trip was oral.

22          THE COURT:  Was what?

23          MR. BAISE:  Oral.

24          THE COURT:  Yes, okay.

25          MR. BAISE:  That, frankly, was not sufficient, and so

Dc5Whof1

1    it strikes me as a situation where it would have been very easy

2    for the probation officer or supervised release officer to

3    provide written confirmation.  Why not?  So that's why I asked

4    for a little bit more leniency with regard to the travel.

5              Regarding restitution, the victims, in part, I am

6    advised, call him wanting to know what he's doing.  And it is

7    his responsibility, as ordered by this Court, to go about

8    collecting money owed to him by third parties.  And so that's

9    why I made the request with regard to this Mr. Epstein in

10   particular because there are business arrangements, which I am

11   unaware of and this Court presumably is unaware of, that lead

12   him to believe that he can, in part, fulfill the obligation

13   imposed by this Court on him with regard to the 475 million.

14             With regard to the mental health examination, I'm

15   jumping ahead just a tad, we find that a bit amusing, your

16   Honor.  Here's a fellow who's been in jail 18 years and never

17   had a mental health examination.  No one apparently thought it

18   was sufficient or required to have a mental health evaluation

19   for 18 years in a federal penitentiary.  That strikes us as

20   maybe a bit of retaliation for my simply requesting that

21   someone accompany him when the supervisory officers came by.

22   Maybe it's not, but that one strikes me as very odd.

23             With regard to the employment, what counsel apparently

24   is referring to is Towers Financial.

25             THE COURT:  Is what?

26

Dc5Whof1

1            MR. BAISE:  Towers Financial.  There is no such thing

2    as Towers Financial now.  I mean, Mr. Hoffenberg is devoting

3    his time and effort, as I understand it from him and his

4    colleagues, full time attempting to seek restitution of a

5    partial amount or all of the amount of this 475 million.

6            Now, again, the supervisory release is to help

7    integrate this fellow back into society and there's a

8    concomitant requirement, obviously, looking out for the

9    protection of the public.  Strikes me he has learned his

10   lesson, that the danger that he would pose to the public which

11   is an issue that I've raised in my letter, didn't bring up

12   today because I think it's better dealt with in written papers

13   to your Honor, and that's what I call the scarlet letter, and

14   that is and what I couldn't figure out, nor other counsel, with

15   all the phone calls that he is making, presumably letters that

16   he's writing, it would appear to me that the supervised release

17   officers are wanting him to report every one of those to their

18   office.  And not only do you report, they have the opportunity

19   to call up the person he is talking to and say, Hey, do you

20   know this guy's a crook, do you know what he did?

21           I think most people who operate in this area know what

22   Mr. Hoffenberg did, and he's very up front.  In fact, he tells

23   those who are unaware, and I think I proposed maybe written

24   confirmation that the person sign, but it strikes me as I look

25   at the case law in this area, this trying to keep tabs of him

Dc5Whof1

1    as he's trying to reintegrate himself back into the community,

2    trying to collect this money is a bit of, as I said, a scarlet

3    letter and the court cases, as you know, talk about this a

4    great deal, particularly in the Second Circuit.

5           The financial disclosure forms, again, strikes me that

6    that is a little uncertain.  He's certainly willing to fill out

7    financial disclosure forms.  He has an account at Chase

8    Manhattan.  If they want to see that, fine.  This is not as if

9    he's stealing from Chase Manhattan, but it involves all the

10   efforts that he is attempting to undertake with regard to

11   obtaining restitution.  That does strike us as not assisting

12   him in reintegrating himself, paying his debt to society, which

13   he's already paid in large portion, but he's committed to

14   restitution of a large sum of money as well.

15          But going back and saying that he is a danger because

16   he assaulted someone, I'm not sure where that came from.  I

17   certainly don't blame counsel for bringing that up, but I do

18   find it puzzling that it's turned against him and these

19   officers are suggesting mentally and through an incident that

20   occurred 14 years ago upon him, utilized to protect them, it

21   strikes me that is a bit disingenuous, your Honor.

22          If counsel wishes to respond, if I'm incorrect on my

23   facts, I'll stand corrected.

24          THE COURT:  That's all right.  Anything else you want

25   to tell me?

Dc5Whof1

1          MR. BAISE:  No.  Thank you.

2          THE COURT:  Anything from the government with respect

3   to your requests?

4          MR. COOPER:  Yes, your Honor, briefly, just to clarify

5   a few things.

6          One, with respect to the mental health evaluation, the

7   presentence report refers to various issues that give rise to

8   that request.  So that's the source of that.

9          Second, just to clarify the record, the government is

10  not using the assault in the BOP as a pretense for getting this

11  condition or for opposing the request that somebody always be

12  present.  It's primarily a matter of flexibility and the need

13  not to preschedule the home visits that gives rise to that

14  position.

15         On financial disclosure forms, it's my understanding

16  from the officers that nowadays with respect to financial

17  crimes that special condition is somewhat routinely imposed.

18  It was not in this case because the judgment was imposed in

19  1997, when it wasn't as frequent a condition.

20         With respect to the third-party risk and the probation

21  office notifying third parties of the defendant's status,

22  again, it's my understanding from the officer that in the

23  normal course, the probation officer discusses with the

24  defendant what the defendant is doing with respect to business,

25  to try to get back into the working world and then makes a

29

Dc5Whof1

1    determination, based on those conversations, whether there's a

2    potential risk.  This is not the situation where on receiving a

3    list of people that the defendant is working with the probation

4    office in a blunderbuss fashion contacts everybody to announce

5    the releasee's status as someone who's been convicted of a

6    crime.

7            I believe that's all, your Honor.

8            THE COURT:  Okay.

9            MR. COOPER:  Thank you.

10           THE COURT:  Thank you all very much.  I think this has

11   been fruitful and I hope we can work out a supervised release

12   for Mr. Hoffenberg that is going to benefit him and ensure that

13   the process is an appropriate one.

14           With respect to the issue of time of the inspections,

15   it's standard in the district, it's standard in the office, not

16   to announce the time of the visits, and there will be no

17   requirement of any announcement.  That obviously will not

18   prevent the defense, if at any time they feel that this has

19   been abused, from bringing it to my attention, but I don't

20   expect that that will be the case.

21           As far as who is in the house, anybody can be in the

22   house at any time.  I certainly am not going to take any

23   position on that at all, and if there's somebody there, fine.

24   If there isn't somebody there, that's fine, too.

25           With respect to travel, Mr. Hoffenberg is permitted to

Dc5Whof1

1    travel to Philadelphia on any occasion that he deems

2    appropriate to visit his wife, and the only condition there

3    will be that he notify the probation office in advance that he

4    wants to go.  That is also true with respect to any travel

5    within the City of New York that is related to meeting somebody

6    at the airport or something of that kind.  On the other hand,

7    an airport's an airport, and so the probation office should

8    also be notified of those visits.

9              MR. BAISE:  In writing, your Honor, or orally?

10             THE COURT:  No.  Telephone calls.

11             MR. BAISE:  Just telephone call?

12             THE COURT:  Sure.  That's fine.

13             There's no serious request at the moment concerning

14   China, so we won't even worry about that for now.

15             The question of restitution and the past history is a

16   sensitive issue, and I recognize that, because of the nature of

17   the crime and the present circumstance, so there will be no

18   direct contact with any of the victims.  If Mr. Hoffenberg

19   wants to talk to Jamie Dimon or Jeremy Epstein or Volker or

20   anybody else about getting some money back, that's fine.

21   Obviously, he can do that.

22             Here's the point.  If this is going to be a

23   satisfactory supervised release, Mr. Hoffenberg has to work

24   with the probation office and indicate to them what he intends

25   to do about employment and the restitution.  He's got to be

1    candid about that.  And as far as the employment is concerned,

2    if the company is defunct, which I assume it is, whatever

3    employment he gets into, he must be candid and forthright with

4    the probation department for the obvious reason that he has a

5    history, and that depends on what the proposed employment is.

6    I think that takes care of those matters.

7             For the moment, I think we'll pass the community

8    service.  Perhaps at a later stage, that might be something

9    appropriate, but if in good faith Mr. Hoffenberg seriously

10   wants to devote himself to trying to work to be in a position

11   to make restitution, that certainly should be encouraged, and

12   we'll see how that works out.  At the moment, I think,

13   community service, at this early stage in the supervised

14   release -- it may be appropriate later -- at this point I would

15   say it's not necessary.

16            The mental health assessment will be done.  There is a

17   history.

18            There will be no recording of the probation officer's

19   statements or videotaping or anything of that kind.

20            I think that covers everything.

21            Procedurally, hopefully, this will all work itself

22   out, the conditions, mandatory conditions of the sentence, the

23   standard conditions.

24            I didn't do the financial.  Yes, financial disclosure,

25   standard financial disclosure.

Dc5Whof1

1        The way in which any changes in the situation will

2   result will come, I guess, one of two ways.  One, the probation

3   officer, if it's necessary, will advise me if he thinks a

4   hearing is necessary, with respect to a violation of any of the

5   provisions of supervised release.  Alternatively, if the

6   defense wants to raise any issue with me of some change that

7   seems to be appropriate, I certainly am -- you may not

8   recognize this possibility, but I intend to be Santa Claus and

9   I'm going to be Santa Claus from December 12 to January 12.

10  Other than that, I'm available to hear anything, and if

11  anything is critical during that period, which I certainly hope

12  will not be the case, but if it is, it is, I can always be

13  reached and deal with whatever it is in some appropriate

14  fashion.

15        Is there anything else that we can profitably do

16  today?

17        Yes, sir.  I'll defer to the defense.

18        MR. BAISE:  Thank you, your Honor.

19        THE COURT:  Only because of your age.

20        MR. BAISE:  Yes, of course.  Of course.

21        One comment.  You keep referring to, your Honor,

22  probation.

23        THE COURT:  I say probation office.

24        MR. BAISE:  Supervised release and you know as well as

25  I do, there's a clear differentiation there, so that's just one

Dc5Whof1

1    comment.

2           Secondly, with regard to the mental health issue,

3    Mr. Hoffenberg would prefer hiring his own person to do that.

4           THE COURT:  That's something that might work out.

5    Depends on who it is and how it's done.  That's something that

6    could be discussed.  But there will be an assessment.

7           MR. BAISE:  Okay.

8           THE COURT:  And one that seems appropriate to the

9    probation officer.

10          MR. BAISE:  And he will pay for it.  He's volunteered

11   to do that.

12          THE COURT:  Who will pay for it?

13          MR. BAISE:  Mr. Hoffenberg will pay for it.

14          THE COURT:  I don't know, I guess.

15          Who pays?

16          MR. BAISE:  Obviously, Mr. Hoffenberg would like to

17   have flexibility, if that is indeed --

18          THE COURT:  If he comes up with somebody that's

19   satisfactory, I take it that that would be okay.

20          MR. COOPER:  I believe, if the individual is

21   satisfactory to the probation office, then it's satisfactory.

22          THE COURT:  You're from Washington, but you don't

23   understand we have psychiatrists in New York around every

24   corner.

25          MR. BAISE:  We have them in Washington, too.  We need

Dc5Whof1

```
 1   them down there.

 2            THE COURT:  And some of them are very good.

 3            MR. BAISE:  Let's hope they are.

 4            THE COURT:  If he finds such a person, I'm sure it

 5   will work out.

 6            MR. COX:  Your Honor.

 7            THE COURT:  Excuse me.

 8            Anything else?

 9            MR. BAISE:  The only item, when you said, no contact

10   with the victims --

11            THE COURT:  Now, look.

12            MR. BAISE:  -- we have counsel here.

13            THE COURT:  Obviously, he cannot prevent somebody from

14   calling him up.

15            MR. BAISE:  Calling him, okay, fine.

16            THE COURT:  Obviously, he can't prevent that, and any

17   such contacts would be appropriate to report to the probation

18   officer.  But, again, as I say, there's got to be full

19   disclosure of what this effort for restitution is all about.

20            MR. BAISE:  And we do not have any problem with that,

21   although that's not an area that I am covering at this point.

22            THE COURT:  Okay.

23            MR. BAISE:  He has counsel for that, but I just want

24   the record to show that during his incarceration, he advises me

25   that a number of people called him saying, How are you going to
```

Dc5Whof1

1   help repay our funds, which is only a natural reaction from the

2   person who, I want to be able to respond.

3           THE COURT:  He's in a position to say I cannot discuss

4   that with you because I have been told not to contact any of

5   the victims.

6           MR. BAISE:  He wouldn't be contacting them, they would

7   be contacting him.

8           THE COURT:  Yes.  I'm saying, but he doesn't, I think.

9   I hope that's clear.

10          MR. BAISE:  It is, and particularly in dealing with

11  one of the third parties, Mr. Epstein, and he's not a victim,

12  so I just want to make that clear to the probation officer or

13  the supervised release officer, he could not cut off any

14  contact.

15          Thank you very much, your Honor.

16          THE COURT:  Anything further from the government?

17          MR. COOPER:  There was one request for a search

18  special condition.

19          THE COURT:  I don't think that's necessary.  I mean, I

20  think the probation officer as a matter of law is entitled to

21  search.  But, if there is any question about it, the answer is

22  yes, he may.

23          MR. BAISE:  There's some law that goes both ways on

24  that.  You have to have a mere suspicion, according to the

25  Supreme Court, in a 1996 case, mere suspicion, but we'll bring

Dc5Whof1

1    that up in a memorandum that we will address to the Court.

2              MR. COOPER:  Lastly, your Honor, I'm advised that the

3    probation office would like a release to speak with whatever

4    mental health provider does the evaluation after that provider

5    is approved by the office.

6              THE COURT:  Sure.  Of course.

7              MR. COOPER:  With that, nothing else from the

8    government.  Thank you, your Honor.

9              MR. BAISE:  The defense agrees with that.

10             THE COURT:  That's fine.  Good luck.  I hope it works

11   out and that we never have to meet again on this subject.

12             Is there anything else?  Thank you, all.

13             MR. BAISE:  Not from the defense.  Thank you, your

14   Honor.

15             THE COURT:  By the way, written record, it's here.  We

16   have the best court reporter in the business.  All you have to

17   do is pay her.

18             MR. KRAMER:  Your Honor, I noticed the portrait in the

19   back of Judge Thomas.

20             THE COURT:  It's my father.

21             MR. KRAMER:  That's what I wanted to know.

22             THE COURT:  You can tell, there is a reason for those

23   two gentlemen being there.  Never trust a man with a moustache.

24   Thank you.

25             (Adjourned)